UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:24-cr-1l65-CEH-SPF
18 U.S.C. § 371

MARCO GAUDINO

### INFORMATION

The United States Attorney charges:

### COUNT ONE
**(Conspiracy)**

#### A.    **Introduction**

At times relevant to this Information:

The Conspirators and Their Roles

APR 12 2024 PM2:03
FILED - USDC - FLMD - TPA

1.    Defendant Marco Gaudino ("GAUDINO") resided in

Washington. GAUDINO played multiple roles in the conspiracy, including

securing and utilizing compromised credentials to gain unauthorized access to

protected computers, searching those protected computers for electronic items

and information, obtaining and stealing electronic items and information

deemed desirable, organizing and exploiting some of those electronic items

and information, and intercepting the contents of wire, oral, and/or electronic

video communications.

2.      To facilitate GAUDINO's role in the conspiratorial conduct, GAUDINO maintained and utilized computers, the Twitter account @E—es, and the Google account associated with email address m—99@gmail.com. GAUDINO utilized Internet Protocol address ("IP address") 67.183.179.97 and at least two other IPv6 addresses to access the Internet from his Washington residence.

3.      Co-conspirator Timothy Burke ("BURKE") resided in Tampa, Florida in the Middle District of Florida. BURKE also played multiple roles in the conspiracy, including utilizing compromised credentials to gain unauthorized access to protected computers, searching those protected computers for electronic items and information, obtaining and stealing electronic items and information deemed desirable, organizing and exploiting some of those electronic items and information, and intercepting and disclosing the contents of wire, oral, and/or electronic video communications.

4.      To facilitate BURKE's conspiratorial conduct, BURKE maintained and utilized the website ilovecitr.us, multiple computers, and electronic communications services, including his Twitter account @b—og and the Google accounts associated with email addresses t—ke@gmail.com and tim@b—ns.com. BURKE utilized IPv4 address 47.197.207.14 to access the Internet from his Tampa residence.

2

The Companies

*The National Sports League*

5.      The National Sports League ("NSL") was a professional sports league founded in New York City, New York. The NSL operated in North America and was composed of teams based in states across the United States and in Canada.

6.      As one of the major sports leagues in North America, the NSL had long-standing contracts and partnerships with television and radio network broadcasters in the United States, Canada, and elsewhere.

7.      Pursuant to its operations, the NSL utilized computer systems in or affecting interstate and/or foreign commerce, including those that made use of one or more file transfer protocol ("FTP") servers, such as an FTP server located at ftp://ftp01.NSL.com. Access to that FTP server required the use of a username and password (hereinafter, also "credentials").

*StreamCo Inc.*

8.      StreamCo Inc. ("StreamCo") was a video contribution technology company based in the United States that provided worldwide live video streaming for television, mobile, online, and social media. StreamCo utilized computer network systems in or affecting interstate and/or foreign commerce.

3

9.     The StreamCo-Net was a StreamCo service that allowed its broadcaster-customers to electronically record and transmit high-resolution content and communications over the Internet. The StreamCo-Net offered a preview function that enabled its broadcaster-customers to access and review, at a lower resolution, video content being streamed across the StreamCo-Net for quality assurance and for other business-related purposes. The StreamCo-Net preview function was viewable by accessing specific uniform resource locaters ("URLs") that were composed of letters, numbers, and symbols and included a unique StreamCo-assigned "BID," generated by an algorithm, that functioned much like a Social Security number.

10.     The BIDs ranged from 9-16 characters and were associated with the StreamCo devices utilized by StreamCo and its customers to capture, transmit, and record streamed content. In other words, a camera used to capture and stream events, including in-studio productions, was plugged into a StreamCo device that had an assigned unique BID. Each StreamCo device was typically only associated with a discrete StreamCo customer and was not typically shared between StreamCo customers.

11.     Each StreamCo Internet video transmission was encoded by a StreamCo device at the event location and sent in a high-resolution video format via a StreamCo proprietary streaming point-to-point protocol to a

4

StreamCo receiving device capable of decoding that transmission, which also had an assigned unique BID.

12. The StreamCo-Net was designed to limit access to only authorized customers through the Internet via a secured password-protected website that required customers to first enter assigned credentials before gaining access.

*Network #1*

13. Network #1 ("NW-1") was a multinational media company headquartered in New York City, New York that produced and distributed content through multiple brands, including NW-1 News Media and NW-1 Sports. NW-1 utilized computer systems in or affecting interstate and/or foreign commerce.

14. NW-1 was a StreamCo broadcaster-customer and therefore owned and utilized multiple StreamCo devices to develop and stream NW-1 content.

*Network #2*

15. Network #2 ("NW-2") was a commercial broadcast television and radio network, headquartered in New York City, New York. NW-2 produced and distributed content through multiple divisions, including NW-2

News and the NW-2 Sports Network. NW-2 utilized computer systems in or affecting interstate and/or foreign commerce.

16. NW-2 was a StreamCo broadcaster-customer and therefore owned and utilized multiple StreamCo devices to develop and stream NW-2 content.

Definitions

17. A "computer" was an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and included any data storage facility or communications facility directly related to or operating in conjunction with such device.

18. A "protected computer" was a computer which was used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that was used in a manner that affected interstate or foreign commerce or communication of the United States.

19. A "server," including an FTP server, was a computer that provided services for other computers connected to it via a computer network—i.e., a set of computers connected together locally for the purpose of sharing resources—or the Internet. Servers could be physically located and

6

accessed anywhere with a network or Internet connection. A server could have been a physical or virtual machine. A physical server was a piece of computer hardware configured as a server. Multiple virtual servers could be located on a single physical server, but each virtual server's data would be segregated from the data of the other virtual servers.

20.     An "Internet protocol address" or "IP address" was a unique identifier assigned to every computer on the Internet or a local network, much like a phone number. An IP address could at times be used to identify the location of the computer connected to the Internet. Internet service providers could assign two different formats of IP addresses to the same account, an IPv4 address and an IPv6 address. IPv6 is the next generation IP address standard intended to supplement and eventually replace IPv4, which format convention does not allow for enough available IP addresses due to the proliferation of Internet-connected devices.

### B.     The Conspiracy

21.     Beginning on an unknown date, but no later than in or around February 2022, and continuing into May 2023, in the Middle District of Florida and elsewhere, the defendant,

### MARCO GAUDINO,

did knowingly and voluntarily combine, conspire, confederate, and agree with

7

BURKE and other persons, both known and unknown to the United States

Attorney, to commit the following offenses against the United States:

a.   to intentionally access a protected computer without
authorization to obtain information therefrom, in violation
of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii);

b.   to intentionally intercept, endeavor to intercept, and
procure any person to intercept and endeavor to intercept,
a wire, oral, and electronic communication, in violation of
18 U.S.C. § 2511(1)(a) and (4)(a); and

c.   to intentionally disclose, and endeavor to disclose, to any
other person the contents of any wire, oral, and electronic
communication, knowing and having reason to know that
the information was illegally obtained through the
interception of a wire, oral, and electronic communication,
in violation of 18 U.S.C. § 2511(1)(c) and (4)(a).

## C.   The Manner and Means of the Conspiracy

22.   The manner and means by which the conspirators sought to

accomplish the objects of the conspiracy included, among others, the

following:

a.   It was part of the conspiracy that BURKE and

GAUDINO would and did utilize Twitter direct messages and their Google

accounts to exchange information and to coordinate their conduct;

b.   It was further part of the conspiracy that BURKE and

GAUDINO would and did utilize the Internet to search protected computers

and otherwise to secure credentials (usernames and passwords), which had

been issued to other entities and individuals with whom BURKE and GAUDINO had no affiliation;

      c.    It was further part of the conspiracy that BURKE and GAUDINO would and did secure, share, and save credentials found or otherwise obtained that enabled access to protected computers owned or used by the NSL, StreamCo, and NW-2 (collectively, the "Victim Entities"), without having been authorized to possess or share said compromised credentials by the Victim Entities or associated individuals to whom those credentials had been issued;

      d.    It was further part of the conspiracy that BURKE and GAUDINO would and did repeatedly utilize the compromised credentials to gain unauthorized access to the Victim Entities' protected computers;

      e.    It was further part of the conspiracy that, after gaining unauthorized access to the Victim Entities' protected computers, BURKE and GAUDINO would and did search the protected computers for electronic items and information they deemed desirable;

      f.    It was further part of the conspiracy that BURKE and GAUDINO would and did obtain and steal electronic items and information found on the Victim Entities' protected computers without securing any

authorization or permission from the Victim Entities to observe, possess, or use said items or information;

g.     It was further part of the conspiracy that BURKE and GAUDINO would and did use their respective computers to organize and exploit electronic items and information obtained and stolen from the StreamCo-Net, including StreamCo-Net BIDs and other proprietary information, to intercept, and to endeavor to intercept, the contents of wire, oral, and/or electronic video communications as they were being transmitted across the StreamCo-Net (the "intercepted contents") by its broadcaster-customers;

h.     It was further part of the conspiracy that BURKE and GAUDINO would and did download and save to their respective computers the intercepted contents retrieved via the StreamCo-Net;

i.     It was further part of the conspiracy that BURKE and GAUDINO would and did exchange direct messages about disclosing some of the intercepted contents retrieved via the StreamCo-Net;

j.     It was further part of the conspiracy that BURKE would and did disclose some of the intercepted contents to other persons or entities;

k.     It was further part of the conspiracy that, prior to distributing some of the intercepted contents, BURKE took steps to conceal

that the intercepted contents had been originally retrieved from the StreamCo-Net by, among other conduct, altering the appearance and metadata of the wire, oral, and/or electronic video communications by re-recording the intercepted communications onto a secondary device and distributing said altered versions of the video communications, rather than the original intercepted contents;

1.     It was further part of the conspiracy that BURKE and GAUDINO would and did engage in multiple virtual exchanges, perform acts, and make statements to promote and achieve the objects of the conspiracy and to misrepresent, hide, and conceal the conspiracy and the acts committed in furtherance thereof.

### D.     Overt Acts

23.     In furtherance of the conspiracy, and to effect its objects, BURKE and GAUDINO committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

a.     On or about February 20, 2022, GAUDINO and BURKE exchanged direct messages via their Twitter accounts, each of which constitutes a separate overt act, regarding compromised credentials that would enable them to access a protected computer, namely the NSL FTP server

located at ftp://ftp01.NSL.com, without having been authorized by the NSL

to use those credentials or to access that FTP server:

| Overt Act | Direct Message | Message From | Message To |
|---|---|---|---|
| a.1 | ftp://ftp01.NSL.com<br>f—ry<br>H—s1<br>It's the main NSL FTP for all of their footage they post to social, send to partners, etc. | E—es | b—og |
| a.2 | i see | b—og | E—es |

      b.     On or about each of the dates set forth below, each of

which constitutes a separate overt act, BURKE sent a direct message via his

Twitter account to GAUDINO, regarding BURKE's unauthorized access of a

protected computer, namely the NSL FTP server located at

ftp://ftp01.NSL.com, and BURKE's efforts to obtain, download, and steal

electronic items and information found therein:

| Overt Act | Date | Direct Message | Message From | Message To |
|---|---|---|---|---|
| b.1 | 05-08-2022 | I kind of gave up on the NSL FTP because the transfers were so slow. Are they slow for you? | b—og | E—es |
| b.2 | 06-22-2022 | for whatever reason when i try to download multiple at a time it ends up in like an 80 GB broken file of garbage | b—og | E—es |
| b.3 | 06-22-2022 | i figured it out, it's the way the segmenting works in cyberduck i turned it off and the transfers are way slower but they work now | b—og | E—es |

c.      On or about August 22, 2022, GAUDINO and BURKE exchanged direct messages via their Twitter accounts, each of which constitutes a separate overt act, regarding compromised NW-2 credentials that would enable the conspirators to access a protected computer, namely the StreamCo-Net, without having been authorized by either NW-2 or StreamCo to use those credentials or to access that computer network:

| Overt Act | Date | Direct Message | Message From | Message To |
|---|---|---|---|---|
| **d.1** | 08-22-2022 | Oh, also NW-2-net-demo NW-2news!! https://t.co/BW30vuhCoT | E—es | b—og |
| **d.2** | 08-22-2022 | >1080i lol. fun though thanks | b—og | E—es |

d.      On or about each of the dates (and times) set forth below, each of which constitutes a separate overt act, BURKE and GAUDINO, as specified, used compromised NW-2 credentials to gain unauthorized access from the specified IP address to a protected computer, namely the StreamCo-Net:

| Overt Act | Date (UTC) | Conduct | IP Address Conspirator |
|---|---|---|---|
| **e.1** | 08-22-2022 (19:43:04) | Log in to StreamCo-Net | 67.183.179.97 GAUDINO |
| **e.2** | 08-22-2022 (19:45:26) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| **e.3** | 08-23-2022 (13:56:26) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| **e.4** | 08-24-2022 (17:25:23) | Log in to StreamCo-Net | 47.197.207.14 BURKE |

| e.5 | 09-25-2022 (16:43:27) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| e.6 | 09-28-2022 (18:54:57) | Log in to StreamCo-Net | 47.197.207.14 BURKE |
| e.7 | 10-13-2022 (23:27:10) | Log in to StreamCo-Net | 67.183.179.97 GAUDINO |

e.    On or about the dates set forth below, each of which constitutes a separate overt act, BURKE disclosed the below, which had been culled from electronic wire, oral, and/or video communications that had been intercepted by the conspirators during transmissions by StreamCo broadcaster-customers across the StreamCo-Net:

| Overt Act | Date | Description |
|---|---|---|
| f.1 | 10-10-2022 | Excerpts from an audio/video NW-1 stream intercepted on 10-06-2022, which included interview discussion between show host and guest |
| f.2 | 04-24-2023 | Excerpt from audio/video NW-1 stream intercepted on 09-28-22 (together with false and misleading caption), which originally included pre-production statements by show host expressing concern about potential impact to host's house from approaching Hurricane Ian |

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.    The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 982(a)(2)(B), 1030(i), and 2513, and 28 U.S.C. § 2461.

2.    Upon conviction of a violation of 18 U.S.C. § 1030, the defendant, GAUDINO, shall forfeit to the United States, pursuant to 18

14

U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds

obtained, directly or indirectly, as a result of such violation and, pursuant to

18 U.S.C. § 1030(i), any personal property used or intended to be used to

commit or to facilitate the commission of such violation.

3.      Upon conviction of a violation of 18 U.S.C. § 2511, the

defendant, GAUDINO, shall forfeit to the United States, pursuant to 18

U.S.C. § 2513, any electronic, mechanical, or other device used, sent, carried,

manufactured, assembled, possessed, sold, or advertised in violation of section

2511.

4.      The property to be forfeited includes, but is not limited to, the

following items seized from GAUDINO on May 8, 2023:

| Reference Number | Description of Asset |
|---|---|
| 4.a | Black Custom PC, NZXT Case Model #:PB1-XR02-BL-004 |
| 4.b | Black WD Elements Portable Hard Drive S/N: WXB1E99CKJ51 |
| 4.c | Black Google Pixel Cell Phone in Otter Box Case |

5.      If any of the property described above, as a result of any act or

omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third

    party;

15

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be

        divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute

property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C.

§ 982(b)(1).

                    ROGER B. HANDBERG
                    United States Attorney

By:  _____

                    Jay G. Trezevant
                    Assistant United States Attorney

By:  _____

                    Rachelle DesVaux Bedke
                    Assistant United States Attorney
                    Chief, Economic Crimes Section